UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SEAN JULIAN, et al., )<br>)<br>    *Plaintiffs* )<br>)<br>v. )<br>)<br>GEORGE WESTON BAKERIES )<br>DISTRIBUTION, INC., et al., )<br>)<br>    *Defendants* ) | Docket No. 05-77-P-S |

*RECOMMENDED DECISION ON MOTION TO DISMISS*

Defendant George Weston Bakeries Distribution, Inc. ("Weston")[1] moves to dismiss Counts II and IV-VIII of the plaintiffs' eight-count complaint. I recommend that the court grant the motion.

### I. Applicable Legal Standard

The motion to dismiss invokes Fed. R. Civ. P. 12(b)(6), contending that the counts at issue fail to state a claim on which relief may be granted. Motion to Dismiss, etc. ("Motion") (Docket No. 4) at 1. "[I]n ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendants are entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff[s] would not be unable to recover under any set of facts." *State St. Bank & Trust Co. v.*

---

[1] There is no indication on the docket that the only other named defendant, Glenhuron Bank, Limited ("Glenhuron"), has been served with the complaint and summons. This motion is brought only by Weston.

*Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

## II. Factual background

The complaint includes the following relevant factual allegations.

The twelve named plaintiffs each entered into a distribution agreement with Weston. Complaint and Request for Class Certification ("Complaint") (Docket No. 1) at 1 & ¶ 6. Under the agreements, which were drafted by Weston, each plaintiff is designated as an independent contractor or independent operator. *Id*. at 1 & ¶¶ 7, 10-12. Under the agreements, each plaintiff received a distribution route with exclusive distribution rights for a variety of baked goods and breads in a certain region. *Id*. ¶¶ 8-9. The plaintiffs are economically dependent on Weston, which exerts substantial control over the manner in which they conduct their business. *Id*. ¶¶ 13-14. The plaintiffs work more than 40 hours per week. *Id*. ¶ 16.

Representatives of Weston have contacted various stores or outlets with which the plaintiffs deal and suggested that the outlets impose requirements that would not be in the best interests of the plaintiffs. *Id*. ¶ 19. Weston has made other decisions regarding the plaintiffs' distribution routes that are not in the best interests of the plaintiffs. *Id*. ¶ 20.

Numerous plaintiffs borrowed money to purchase their distribution routes. *Id*. ¶ 22. Numerous plaintiffs financed loans used to purchase their distribution routes through defendant Glenhuron, which is owned by the same entity that owns Weston. *Id*. ¶ 23. Weston and Glenhuron have refused to allow certain plaintiffs to refinance these loans with lenders other than Glenhuron. *Id*. ¶ 24.

### III. Discussion

Weston seeks to dismiss Count II, which alleges interference with economic advantage, *id.* ¶¶ 36-40; Count IV, which alleges unfair trade practices under Maine law, *id.* ¶¶ 44-47; Count V, which alleges violation of the federal Sherman Act, *id.* ¶¶ 48-52; Count VI, which purports to seek class certification, *id.* ¶¶ 53-54; Count VII, which seeks punitive damages, *id.* ¶¶ 55-57; and Count VIII, which purports to demand a jury trial, *id.* ¶¶ 58-59.[2] The plaintiffs concede that Count IV should be dismissed. Opposition at [5].

### A. Count II

In this count, the plaintiffs allege that they "have business relations with numerous third parties" and that Weston has interfered with those relations by "dishonest, unfair or improper means," causing the plaintiffs financial damage. Complaint ¶¶ 37-40. Weston contends that this count fails to allege that it engaged in either of the two means of economic interference recognized by Maine law. Motion at 3. Under Maine law,

> [t]ortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages.

*Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (footnote and citation omitted). Here, Weston argues that the complaint, however indulgently read, does not allege either fraud or intimidation. Motion at 3.

---

[2] In their opposition to the motion to dismiss, the plaintiffs request leave to amend their complaint "[t]o the extent this Court deems the facts in the existing Complaint to b[e] somehow insufficient." Response to Defendants' Motion to Dismiss ("Opposition") (Docket No. 9) at [4]. Weston responds that the "new allegations" included in the opposition would not cure the deficiencies in the complaint and that the plaintiffs "have chosen not to try to cure" the deficiencies pointed out by the motion. Reply in Support of Defendant's Motion to Dismiss ("Reply") (Docket No. 14) at 3 n.2. No scheduling order has yet been issued in this case. Accordingly, ample time for amending the complaint will be available to the plaintiffs should they decide to seek leave to amend after the court acts on this recommended decision.

The plaintiffs respond that they "have experienced actionable interference with relationships with their retail store customers in which [Weston] district managers have made misleading statements to store managers about Plaintiff's [sic] stocking of bread and other product sections in those stores," and that this conduct is "reflected in paragraph 19" of the complaint. Opposition at [3]. That paragraph of the complaint provides, in full:

> Representatives of [Weston] have contacted the representatives of various outlets and suggested to the outlets that they impose requirements that would not be in the best interests of the Plaintiffs.

Complaint ¶ 19. This paragraph cannot reasonably be read to allege that Weston's representatives made "misleading statements" to store managers, let alone what the subject matter of those misleading statements was. Nor can it reasonably be read to allege that such conduct "is designed to cast Plaintiffs in a bad light and undermine their relationships with their retail customers," or that "[t]he result is that Plaintiffs are forced to give in to Defendants' [sic] strong-arm methods for fear of reprisals in the form of additional misinformation given to Plaintiffs' clients," as the plaintiffs state in their memorandum of law. Opposition at [3]. The plaintiffs further contend that "[t]he purpose — and result — of Defendants' [sic] actions is to jeopardize Plaintiffs' existing contractual relations with their customers." *Id*. at [3]-[4]. The plaintiffs cannot rely on facts not pleaded in their complaint and not reasonably to be inferred from the pleadings to save this count from dismissal.

Even if the facts asserted in the plaintiffs' memorandum of law were to be alleged in their complaint, they cannot be construed to allege fraud as the means of interference.

> The elements of interference by fraud are:
>
> (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Rutland*, 798 A.2d at 1111 (citation and internal punctuation omitted). Jeopardizing the plaintiffs' relationships with their customers and forcing the plaintiffs to "give in to" Weston's "strong-arm methods" do not constitute reliance by the plaintiff's customers on the allegedly false representations. Similarly, the additional facts do not amount to interference through intimidation, which "involve unlawful coercion or extortion." *Id*. The only coercion alleged in any reasonable reading of the additional facts is of the plaintiffs themselves, not of their customers. *See generally Coyne v. City of Somerville*, 972 F.2d 440, 444-45 (1st Cir. 1992) (court considering motion to dismiss need not credit bald assertions, unsubstantiated conclusions, or subjective characterizations).

Count II should be dismissed.

### B. Count V

Count V alleges that the defendants "have tied two distinct products, that is — (1) ownership of distribution routes and (2) the financing of those distribution routes," that "[t]here is a condition in Plaintiffs' financing agreements that establishes a tie . . . [which] forecloses substantial commerce in the market for the tied product," and that the defendants "have sufficient economic power to distort Plaintiffs' choices with regard to the financing of their distribution routes." Complaint ¶¶ 48-52. Weston contends that the complaint fails to allege either a *per se* tying claim or a claim that its conduct had an actual adverse effect on competition under the Sherman Act,[3] which is invoked in the title of Count V. Motion at 5-6 & n.4. The plaintiffs' response addresses only a *per se*, Section 1 claim. Opposition at [4]-[5].

As the First Circuit instructs,

> Section 1 of the Sherman Act prohibits a seller from "tying" the sale of one product to the purchase of a second product if the seller thereby avoids competition on the merits of the "tied" product. . . .

---

[3] The Sherman Act begins at 15 U.S.C. § 1 and generally forbids combinations in restraint of trade or commerce among the states.

> There are essentially four elements of a *per se* tying claim: (1) the tying and tied products are actually two distinct products; (2) there is an agreement or condition, express or implied, that establishes a tie; (3) the entity accused of tying has sufficient economic power in the market for the tying product to distort consumers' choices with respect to the tied product; and (4) the tie forecloses a substantial amount of commerce in the market for the tied product.

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1178 (1st Cir. 1994) (citations omitted). To Weston's first contention, that the complaint does not allege the second, third and fourth elements of such a claim, Motion at 6-8, the plaintiffs respond that the motion "misapprehends the nature of Plaintiff's [sic] tying claim," Opposition at [4]. They assert that their claim "relates to the continued maintenance of distributorships and the Plaintiff's [sic] ability — or lack thereof — to refinance with lenders other than [Glenhuron]. The condition imposed by [Weston] is the threat to terminate distributorships if Plaintiffs seek to refinance with another lender." *Id*. The complaint does allege that the defendants "have refused to allow certain Plaintiffs to refinance with other lenders other than Glen Huron [sic] Bank." Complaint ¶ 24. However, it also alleges that "[t]here is a condition in Plaintiffs' financing agreements that establishes a tie." *Id*. ¶ 50. This allegation is sufficient to allege the second element of the claim, even though it is inconsistent with the statement in the plaintiffs' memorandum of law, basic to their argument, to the effect that Weston imposed the condition at issue. Opposition at [4]. The plaintiffs are again attempting to change or amplify the factual allegations in the complaint solely through their memorandum of law, an avenue not available to them for that purpose.

While the second element of the claim is adequately pleaded, the same cannot be said of the third and fourth elements, which require a complaint to allege a definition of the relevant product market. *Re-Alco Indus., Inc. v. National Ctr. for Health Educ., Inc.* 812 F. Supp. 387, 391 (S.D.N.Y. 1993). The alleged product market must include all products that are reasonably interchangeable.

*United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  The complaint cannot reasonably be read to do so.  The plaintiffs assert that the relevant market "is the sale of independent operator distributorships for delivery of bakery products and baked goods to major retail stores in Maine."  Opposition at [4].  They assert that Weston "has substantial economic power to compel the Plaintiffs to accept refinancing exclusively through [Glenhuron]" because "[t]here is only one other company in this discrete market, Pepperidge Farms." *Id*. at [5].  None of this information appears in the complaint.

Weston also notes that the plaintiffs do not allege that it "actually terminated any of their distributorships as a result of their having sought refinancing through a lender other than Glenhuron Bank," and argues that a threat alone is insufficient to create an illegal tying arrangement.  Reply at 4-5.  The law in this circuit supports this position.

> Where a tying product has not been withheld, there is no tie.  There is no tie for any antitrust purpose unless the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one.

*Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 18 (1st Cir. 1996) (citation and internal quotation marks omitted).  Threats that are not alleged to have been carried out are insufficient to establish a tie or any injury.[4]  *Id*. at 17.  Here, the plaintiffs do not allege that those plaintiffs who financed their purchase of the distributorships through Glenhuron were required by some action of one or both of the defendants to seek refinancing, that refinancing terms more favorable than those offered to them by Glenhuron were available to them at the relevant time, or that they suffered any other injury as a result of Weston's alleged threat.  *See generally Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 815 (1st Cir. 1988).

---

[4] Unlike the other counts in the complaint, Count V contains no *ad damnum* clause.

Count V should be dismissed.[5]

### C. Other Counts

Weston moves to dismiss the remaining counts because they do not present claims for relief. Motion at 8-9. The counts seek class certification (Count VI), punitive damages (Count VII) and a jury trial (Count VIII). Complaint ¶¶ 53-59. The plaintiffs respond that they are "not pre[cluded]" from making these requests in the manner in which they have been made. Opposition at [5], [6]. Their response evinces a lack of familiarity with the federal rules of civil procedure and this court's local rules that is also apparent in their failure to number the pages of their memorandum of law. Local Rule 7(e).

Class certification is not obtained as a result of a count asserted in the complaint. The court must determine by order whether to certify the action as a class action "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). An order with the necessary detail, *see* Fed. R. Civ. P. 23(c)(1), is not granted on the basis of allegations in the complaint. A party or parties seeking class certification must do so by motion, with adequate supporting materials. *See* Fed R. Civ. P. 23(a)-(b), (g). Dismissal of Count VI will not hamper the plaintiffs in making this presentation. The complaint contains sufficient allegations to give the defendants notice that the plaintiffs will be seeking class certification. Complaint, caption & ¶¶ 25-28. Count VI should be dismissed.

Punitive damages are available under Maine law on tort claims where the plaintiff demonstrates actual or implied malice on the part of the defendant. *Tuttle v. Raymond*, 494 A.2d

---

[5] The plaintiffs contend that "if this Court finds that there is an insufficient factual predicate at this stage of the proceedings, it should nevertheless permit Plaintiffs to develop the facts necessary through discovery in order to move the claim forward." Opposition at [5]. They cite *Wells Real Estate* as authority for this assertion, but the cited discussion in that case, 850 F.2d at 812, deals only with subject matter jurisdiction arising out of an effect on interstate commerce. That is not the issue here. As I have already noted, a scheduling order has not yet issued in this case. If the plaintiffs undertake discovery promptly upon resolution of this motion, which does not seek dismissal of all of their claims, they should be able to seek leave to amend their complaint to allege a Sherman Act violation adequately within the time allowed by the discovery order for amendment of the pleadings, should they discover the information they seek.

1353, 1361 (Me. 1985). It is the tort claim that gives rise to the demand for punitive damages; no demand for damages stands alone. Count VII must be dismissed. *Frank v. L.L. Bean, Inc.*, 352 F.Supp.2d 8, 14 (D. Me. 2005).

A demand for jury trial must be made in writing within a set period of time. Fed. R. Civ. P. 38(b). This court's Local Rule 38 requires that, if a demand for jury trial "is endorsed upon a pleading pursuant to Fed. R. Civ. P. 38(b), . . . the designation of the pleading shall include the words 'AND DEMAND FOR JURY TRIAL' or the equivalent on the first page." The complaint does not comply with this rule. Count VIII should be dismissed, but leave to amend the complaint in accordance with the local rule should also be granted, as the defendant has received written notice of the demand in a timely fashion by virtue of the erroneous approach used by the plaintiffs.

### IV. Conclusion

For the foregoing reasons, I recommend that the motion of defendant George Weston Bakeries Distribution, Inc. be **GRANTED** in its entirety.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of August, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge